ARTHUR B. HYMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM S. GORDON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BERTHA M. GORDON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 79557, 81080, 81081.    Promulgated June 22, 1937.

*Arthur B. Hyman, Esq.*, pro se, and *Charles H. Lieb, Esq.*, for the petitioners.

*B. M. Coon, Esq.*, for the respondent.

**OPINION.**

HARRON: There are three issues in these proceedings. The first is involved only in Docket No. 79557 in which the petitioner is Arthur B. Hyman, and concerns the deductibility of losses from alleged sales of securities. The other two issues are common to all three docket numbers and concern the deductibility from the distributive shares of partnership income of a certain alleged bad debt and a certain alleged loss of the partnership.

*Issue (1).*—The respondent has disallowed claimed capital losses in the amount of $36,664.15 from the sale of securities by the petitioner in the taxable year upon the ground that the transactions through which such losses were allegedly sustained did not constitute bona fide sales. If the petitioner gave to his wife the securities upon which he claims losses, he could not take deductions under section 23 (e) (2) of the Revenue Act of 1932. If the "purchases" in the name of Mrs. Hyman were in fact repurchases by the petitioner, he would not be entitled to a deduction under the wash sales provision of the statute, section 118 of the Revenue Act of 1932. The burden of proof is on the petitioner to show that the claimed deduction is allowable.

It is admitted that the petitioner's motive in disposing of the securities involved was to establish a loss for tax purposes. Such transactions as here involved have been viewed unfavorably. Congress, in the Revenue Acts of 1934 and 1936, section 24 (a) (6), has expressly provided that no deductions shall be allowed in respect of losses from sales or exchanges of property, directly or indirectly, between members of a family. However, the Revenue Act of 1932 did not contain such provision and this issue must be determined

upon the facts and upon the decisions of this Board and the courts under the Revenue Act of 1932.

With respect to the disposition of the securities listed in group 1 of the findings of fact, it is clear that Hyman sold these securities indirectly to his wife. There was a bid to buy for her account at the market placed by Hyman as his wife's agent, and an offer to sell from his account at the market placed with the same broker in each instance. Mrs. Hyman borrowed almost all the necessary money from the petitioner and gave her note to him. She has since made substantial payments on her note. There are no facts before us to show that the note was not bona fide. Therefore, it is held that Hyman sold indirectly to his wife the securities listed in group 1. The transaction relating to the securities in group 1 is distinguishable from the transactions in *D. A. Belden*, 30 B. T. A. 601; *Joseph Blumenthal*, 30 B. T. A. 125; and *George E. Morse*, 34 B. T. A. 943, since, in this case, the wife gave her note for the money advanced by her husband and has made substantial repayments on the note by her personal checks so that we are persuaded she did purchase the securities. The wife here did possess sufficient independent means to make such purchases or to get loan of money to enable such purchases. This proceeding with respect to the group 1 transactions is not distinguishable from *Charles F. Fawsett*, 31 B. T. A. 139, and *Thomas W. Behan*, 32 B. T. A. 1088; affd., 90 Fed. (2d) 609.

With respect to the group 2 securities the facts show that Hyman sold these to Ladenburg, Thalmann & Co.; his account was credited with the proceeds and they were not transferred to Mrs. Hyman's account. Mrs. Hyman had a separate account with Ladenburg, Thalmann & Co., which shows that she held other securities in it besides the group 2 securities she acquired. She had credit with this broker, who carried her personal account on margin. At the end of 1932 she owed this broker over $6,000, considerably in excess of what she owed for the group 2 securities. Cf. *George E. Morse, supra*.

The petitioner is entitled to deduction for loss from the sale of group 1 and group 2 securities and the respondent is reversed in disallowing the deduction claimed under this issue.

*Issue (2).*—From the facts we have found it appears that the Nungesser debt was ascertained to be worthless and charged off in 1932, and from the uncontradicted evidence before us the ascertainment seems to have been made in good faith and to be justified by the facts. Although the note had been held for a long period, we do not think, in view of the partnership's belief in the debtor's ability to pay, that they should have written the debt off in an earlier year. We therefore hold the deduction for this bad debt allowable in the year 1932.

*Issue* (*3*).—The record does not establish in what year the Dietrich loss actually occurred. The money was invested in the invention of Dietrich's in 1925 and 1926, but before 1930 the contract with the Pathe Moving Picture Co. for exploitation of the invention was abrogated. In 1930 the partnership learned that Dietrich had left New York to go to California. In 1930 and in 1931 the partnership attempted to ascertain the status of the invention from Dietrich's former attorney and by writing Dietrich himself but could get no information. In 1932 the partnership again inquired into the matter from Dietrich's former attorney in New York and although so far as the record shows he had received no communication from Dietrich, he expressed it as his opinion that the invention was unsuccessful, that there were no future possibilities in it, and that the partnership might as well write off its investment as a loss. On the basis of these facts the partnership claims that it incurred the loss of its investment in 1932. The Commissioner has determined the fact to the contrary and the burden is on the petitioners to show that his determination is incorrect. We think they have failed to sustain their burden of proof on this point. It has been pointed out often that the statute makes a difference in the time for deduction of a bad debt and for the deduction of a loss. A bad debt is deductible in the year in which it is "ascertained" to be bad, which means the year in which the taxpayer exercising the judgment of a reasonably prudent business man determines that the debt is worthless. On the other hand a loss is deductible only in the year in which it is sustained, which means the year in which the loss occurs, irrespective of when the taxpayer actually ascertains or learns of its occurrence. Here the petitioners clearly confess their lack of knowledge of the status of their investment from 1930 on. They were unable to establish any communication, either directly or indirectly, with the inventor, who alone could inform them of the progress of his work. Even in 1932 the sole information on which they based their claim of loss was an opinion expressed by the inventor's former attorney, apparently without any factual basis except that the Pathe contract had been abrogated before 1930 and that so far as he knew no other company had taken up the invention. The loss may have occurred in 1930 or 1931, or if the inventor was still working on the invention in good faith and had prospects of selling it, no loss may have occurred at all. The respondent has determined that no loss occurred in 1932 and his determination is sustained for failure of proof to the contrary.

Bertha Gordon and William S. Gordon filed a joint income tax return for the year 1932 and a deficiency notice was addressed to them jointly. Mrs. Gordon filed a separate petition with this Board, Docket No. 81081. The deficiency set forth in the deficiency notice

arises out of an increase in the income of William S. Gordon from his law partnership asserted by the respondent. Mrs. Gordon is not a member of the law partnership and the deficiency determined by the respondent does not arise out of her income. It has been held that "spouses are not jointly and severally liable for a deficiency arising entirely out of the separate income of one of them." *Cole* v. *Commissioner*, 81 Fed. (2d) 485; *Frank W. Darling*, 34 B. T. A. 1062. Since none of the deficiency is attributable to the income of Bertha Gordon, she is not individually liable for any part of the deficiency and it is held that there is no deficiency in the petition of Bertha Gordon.

> *Decision will be entered under Rule 50, in Docket Nos. 79557 and 81080. Decision of no deficiency will be entered in Docket No. 81081.*